UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
CENGAGE LEARNING, INC. et al.,

              Plaintiffs,

      v.                      14 Civ. 3174 (DAB)
                                   <u>MEMORANDUM & ORDER</u>
PRAMEET BHARGAVA,

              Defendant.
-------------------------------------------X

DEBORAH A. BATTS, United States District Judge.

    Before the Court is Plaintiffs' Motion for Summary Judgment against Defendant Prameet Bhargava for Copyright and Trademark Infringement. Plaintiffs also move for damages for willful copyright infringement and for a permanent injunction.

    Based on the foregoing, the Court finds that Plaintiffs are entitled to judgment as a matter of law on their Copyright and Trademark Infringement claims. The Court also finds that a genuine dispute of material fact exists as to whether Defendant had knowledge of his copyright infringement. Accordingly, the Court declines to award willful copyright infringement damages as a matter of law and refers the issue of damages to Magistrate Judge Aaron for an inquest into the appropriate amount. Finally, the Court GRANTS Plaintiffs' request for a permanent injunction.

I.   <u>Background</u>

On May 27, 2015 Plaintiffs Cengage Learning, Inc., Pearson Education, Inc., and John Wiley & Sons, Inc. ("Plaintiffs") filed a Second Amended Complaint against numerous Defendants alleging claims for Copyright Infringement under 17 U.S.C. §§ 101-122, Copyright Infringement under 17 U.S.C. §§ 602, Trademark Infringement under 15 U.S.C. § 1114, Trademark Counterfeiting under 15 U.S.C. § 1114(1)(a), and Unfair Competition and False Designation of Origin in violation of 15 U.S.C. § 1125(a). (Second Am. Compl. ("Compl."), dkt. 68.) Almost all Defendants either settled with Plaintiffs or had Default Judgment entered against them. (<u>See</u> Notice of Voluntary Dismissal against Defendant Jamal Yousuf dated April 26, 2016, dkt. 132; Default Judgment and Permanent Injunction dated December 13, 2018, dkt. 158.) The sole remaining Defendant in this Action is Prameet Bhargava, who answered the Second Amended Complaint <u>pro</u> <u>se</u> on August 11, 2015 and appeared telephonically before this Court on January 24, 2017. (Answer, dkt. 90; Scheduling Order, dkt. 165.)

Plaintiffs are well-known publishers of educational textbooks and materials. (Pls.' 56.1 Statement ¶ 1.) Plaintiffs currently sell their works in retail and online bookstores for rental or purchase. (<u>Id.</u> ¶ 4.) Plaintiffs own or are the exclusive licensee of thousands of copyrights, including the

2

textbooks <u>Family Therapy</u> by Nichols, <u>Financial Accounting</u> by
Scott, <u>Fundamentals of Chemical Engineering</u> by Matsoukas,
<u>Fundamentals of Complex Analysis</u> by Saff, <u>Introduction to
Behavioral Research Methods</u> by Leary, <u>Management of
Organizational Behavior</u> by Hersey, <u>Performance Management</u> by
Aquinis, <u>Policy Studies</u> by Fowler, <u>Research Methods</u> by Graziano,
<u>Modern Algebra: An Introduction</u> by Durbin, and <u>Radiation
Detection and Management</u> by Knoll. (<u>See</u> Pls.' 56.1 Statement ¶
15; Compl. Ex. A.) Plaintiffs duly registered their copyrights
with the United States Copyright Office. (Pls.' 56.1 Statement ¶
3; Compl. Ex. A.)

Additionally, Plaintiffs own or are the exclusive licensee
of numerous trademarks, including "PEARSON," "ALLYN & BACON,"
BENJAMIN CUMMINGS," MERRILL," "PRENTICE HALL," "WILEY," and
"JW." (Pls.' 56.1 Statement ¶ 5; Compl. Ex. B.) Plaintiffs have
duly registered their marks on the Principle Register of the
United States Patent and Trademark Office. (Pls.' 56.1 Statement
¶ 6; Compl. Ex. B.)

Plaintiffs assert they invest heavily in textbook
publishing and incur substantial costs in author royalties and
other costs of content creation, including copyediting and
proofreading. (Pls.' 56.1 Statement ¶ 7.) Plaintiffs also assert
that the revenue from their sales of textbooks represents a

substantial amount of Plaintiffs' annual revenues and is "important to Plaintiffs' financial health." (Id. ¶ 8.)

Defendant Prameet Bhargava advertises and sells textbooks to consumers in New York and around the country through the online market places Amazon.com and eBay.com. (Compl. ¶ 9, ¶ 24; Answer ¶¶ 2-4, ¶ 8.) Defendant owns or used to own the Amazon storefronts "Denver Hot Shot Books" and "GotBestThings," through which he sold textbooks. (Compl. ¶ 28; Answer ¶ 12.) From at least August 2013 through May 2014, numerous textbooks bearing the same name as Plaintiffs' authentic works appeared on Defendant's storefronts for sale. (Pls.' 56.1 Statement ¶ 14.)

During that same time period, Plaintiffs purchased eleven different titles from Defendant's Amazon storefronts.[1] Upon receiving the titles, Plaintiffs examined the books and determined that they were counterfeit copies of their own authentic, copyrighted works. (Essig Decl. ¶ 17; Suarez Decl. ¶ 17.) Plaintiffs affirmed the counterfeit books they received were "inferior" to their own authentic works, with "lower

---

[1] The titles were the textbooks discussed above: Family Therapy by Nichols, Financial Accounting by Scott, Fundamentals of Chemical Engineering by Matsoukas, Fundamentals of Complex Analysis by Saff, Introduction to Behavioral Research Methods by Leary, Management of Organizational Behavior by Hersey, Performance Management by Aquinis, Policy Studies by Fowler, Research Methods by Graziano, Modern Algebra: An Introduction by Durbin, and Radiation Detection and Management by Knoll.

quality paper stock, blurred images, or poor-quality binding."
(Essig Decl. ¶ 19.)[2] Plaintiffs also provided online reviews of
Defendant's textbooks from customers who complained of the low
quality and possible counterfeit nature of Defendant's books.
Moreover, Plaintiffs noted that the "counterfeit books bear
replications of a subset of [our] Marks that are
indistinguishable from the real thing." (Id. ¶ 20.) Plaintiffs
never authorized Defendant to reproduce, use or distribute any
product containing any of its trademarks or copyrights. (Id.)

Defendant admits that he sold textbooks to consumers in the
United States through his online market places on Amazon.com and
eBay.com. (See, e.g., Answer ¶¶ 1-4.) Defendant also admits that
he is indeed the owner of the Amazon online storefronts "Denver
Hot Shot Books" and "GotBestThings," (Id. ¶ 12), from which
Plaintiffs purchased counterfeit textbooks. Defendant denies
knowledge, however, that the books he sold through his online
marketplaces were counterfeit. (See, e.g., id. ¶ 6 ("I did not
know that these book would have been not [sic] legitimate or not
authorized.").) Among other things, Defendant also claims that
he was unaware of the quality of the books he sold. (Id. ¶ 22.)

---

[2] Plaintiffs also noted that even "where the counterfeits are not
poorly produced, they exhibit differences that may lead customers to
question the integrity of Pearson's production of goods." (Essig Decl.
¶ 19.)

On September 27, 2017, Plaintiffs moved for Summary Judgment against Defendant Prameet Bhargava. Plaintiffs ask this Court to find Defendant liable for Copyright Infringement under 17 U.S.C. §§ 101-122 and Trademark Infringement under 15 U.S.C. §§ 1114. (Pls.' Mot. for Summary Judgment, dkt. 168.) Plaintiffs seek statutory damages for Copyright Infringement only (which they claim was willful infringement), in the amount of $50,000.00 for each infringed work, or $550,000.00 for all eleven works. Plaintiffs also seek a permanent injunction against Defendant to restrain him from infringing on any of their copyrights or trademarks. (Id.) Defendant has not opposed the Motion for Summary Judgment, or responded to Plaintiffs' 56.1 Statement.

## II.  Analysis

As set forth in detail below, because Defendant admits to selling the counterfeit textbooks at hand, there is no genuine dispute of material fact that would preclude Plaintiffs from establishing Copyright and Trademark infringement. Plaintiffs are entitled to judgment as a matter of law on those claims.

However, because Defendant denies knowing that the textbooks he sold were infringing, Plaintiffs are not entitled to willful copyright damages. The Court refers the issue of

6

statutory damages to Magistrate Judge Aaron to determine the appropriate amount of non-willful damages.

Finally, Plaintiffs are entitled to a permanent injunction against Defendant to prevent him from infringing on their copyrights and trademarks.

### A. Legal Standard for Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Genuine issues of material fact cannot be created by conclusory allegations. Victor v. Milicevic, 361 F. App'x 212, 214 (2d Cir. 2010). Summary judgment is appropriate only when, after drawing all reasonable inferences in favor of a nonmovant, no reasonable juror could find in favor of that party. Melendez v. Mitchell, 394 F. App'x 739, 740 (2d Cir. 2010).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223

(2d Cir. 1994). In assessing when summary judgment should be granted, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could <u>reasonably</u> find for the plaintiff." <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553 (2d Cir. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)). In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.

The non-movant may not rely upon speculation or conjecture to overcome a motion for summary judgment. <u>Burgess v. Fairport Cent. Sch. Dist.</u>, 371 F. App'x 140, 141 (2d Cir. 2010). Instead, when the moving party has documented particular facts in the record, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." <u>F.D.I.C. v. Great Am. Ins. Co.</u>, 607 F.3d 288, 292 (2d Cir. 2010).

If the non-moving party does not respond to the Motion, as is the case here, the Court may accept as true the moving party's factual statements. <u>See</u> S.D.N.Y. L. Civ. R. 56.1(c); <u>Vermont Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 246 (2d Cir. 2004); <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 72 (2d

Cir. 2001). Even if the Motion is unopposed, however, a court may not grant summary judgment unless it determines that the moving party is entitled to judgment as a matter of law. <u>Vermont Teddy Bear Co.</u>, 373 F.3d at 242. In addition, where one party is proceeding <u>pro se</u>, the court reads the <u>pro se</u> party's papers liberally and interprets them to raise the strongest arguments they suggest. <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. <u>Carey v. Crescenz</u>, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Direct Copyright Infringement

Plaintiffs first seek summary judgment on their direct copyright infringement claims. They assert that Defendant directly infringed on their valid copyrights by selling (and admitting that he sold) counterfeit textbooks that were replicas of Plaintiffs' authentic works.

To prevail on a case for direct copyright infringement, Plaintiffs must demonstrate that (1) they hold a valid copyright in the work allegedly infringed; and that (2) the Defendant infringed the Plaintiffs' copyright by violating one or more of the exclusive rights enumerated in 17 U.S.C. § 106. <u>Island Software & Comp. Serv., Inc. v. Microsoft Corp.</u>, 413 F.3d 257,

260 (2d Cir. 2005). The exclusive rights of a copyright owner include the right to reproduce the copyrighted work and the right to distribute the work. 17 U.S.C. § 106. Importing and exporting an infringing work is a violation of right to distribute. See 17 U.S.C. § 602.

On the record before the Court, it is clear that Plaintiffs own valid copyrights. Registration alone is prima facie evidence of validity. 17 U.S.C. § 410(c). Plaintiffs have registered valid copyrights of the works at issue, which have not been assigned, licensed or transferred to Defendant. (See Ex. A of Compl. (listing copyright registrations); Decl. of Richard P. Essig, dkt. 172, ¶ 5; Decl. of Lisa Suarez, dkt. 173, ¶ 5.)

Second, Defendant admits that he "advertised and sold books through Amazon.com and eBay.com" from August 2013 through May 2014. (Answer ¶¶ 8-9.) Defendant also admits that "Denver Hot Shot Books" and "GotBestThings" were his online seller account names or Amazon.com and that he shipped books from those accounts. (Id. ¶ 12). Plaintiffs have provided evidence that they purchased 11 counterfeit textbooks from "Denver Hot Shot Books" and "GotBestThings" between February 2014 and March 2015. (See Essig Decl. ¶ 17; Ex. 1 to Essig Decl. (providing Amazon receipts for counterfeit Pearson textbooks); Suarez Decl. ¶ 17; Ex. 1 to Suarez Decl. (providing Amazon receipts for counterfeit

Wiley textbooks).) This is sufficient to prove that Defendant reproduced and distributed Plaintiffs' valid copyrights.

Defendant's only defense is that he did not know if any of the books he sold were "legitimate or authorized." (Answer ¶¶ 2-6.) However, "[a]lthough willfulness of a defendant may bear on the issue of statutory damages under Section 504(c), ignorance of the law is not a defense to liability." Pearson Educ., Inc. v. Kumar, 721 F. Supp. 2d 166, 179 (S.D.N.Y. 2010), vacated on other grounds 523 F. App'x 16 (2d Cir. 2013). "Copyright infringement is a strict liability offense in the sense that a plaintiff is not required to prove unlawful intent or culpability." EMI Christian Music Grp., Inc. v. MP3tunes, LLC, 844 F.3d 79, 89 (2d Cir. 2016); see also Shapiro, Bernstein & Co. v. H. L. Green Co., 316 F.2d 304, 308 (2d Cir. 1963) ("The imposition of liability upon the Green Company, even in the absence of an intention to infringe or knowledge of infringement, is not unusual."). Therefore, for the purposes of establishing direct liability on the facts before this Court, Defendant's ignorance is of no consequence.[3]

---

[3] While some Courts have looked for intent "where a defendant's system is merely used to create a copy by a third party," Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 130 (2d Cir. 2008), this inquiry arises most often in the ISP or file-share context. Such is not the case here where Defendant has admitted to the selling and distributing of Plaintiffs' copyrighted textbooks.

C. Trademark Infringement

Plaintiffs also make a claim for Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114. They argue that because Defendant has admitted to selling counterfeit textbooks bearing their distinctive marks, they should be entitled to judgment as a matter of law on their Trademark claims.

To prevail on this claim, Plaintiffs must prove (1) that they have valid trademarks under the Lanham Act; and (2) that "defendant's use of a similar mark is likely to cause consumer confusion." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006). Under the Lanham Act, registration of a mark constitutes valid ownership and provides the exclusive right to use the registered mark. 15 U.S.C. § 1057(b). When assessing the "customer confusion" prong involving counterfeit marks, "a court need only determine that the items at issue are counterfeit and that the defendant distributed, offered for sale, or sold the items." Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010).[4]

---

[4] While Courts in the Second Circuit generally rely on the eight-factor test set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495-96 (2d Cir. 1961), to determine if there is a likelihood of confusion, a court need not engage in a Polaroid analysis when evaluating counterfeit marks (rather than derivative marks) because

Plaintiffs have presented clear evidence that they are the owners of several duly registered trademarks, including "PEARSON," "ALLYN & BACON," BENJAMIN CUMMINGS,", MERRILL," "PRENTICE HALL," "WILEY," and "JW," and that they never authorized Defendant to reproduce, use or distribute any product with their trademarks. (See Ex. B of Compl. (listing trademarks registrations); Essig Decl. ¶ 7; Suarez Decl. ¶ 7.)

Plaintiffs have also presented clear evidence that Defendant distributed, offered for sale, and sold textbooks with counterfeit trademarks on them. After ordering and receiving textbooks from Defendant's online storefront, Plaintiff examined them and concluded "the books were all counterfeit copies of Pearson's Authentic Works." (Essig Decl. ¶ 18.) Plaintiff noted that the "counterfeit textbooks are inferior to Pearson's Authentic works. They sometimes have lower quality paper stock, blurred images, or poor-quality binding . . . . [T]hey exhibit differences that may lead customers to question the integrity of Pearson's production of goods." (Id. ¶ 19.) Plaintiff also noted that the "counterfeit books bear replications of a subset of Pearson's Marks that are indistinguishable from the real thing."

---

"counterfeit marks are inherently confusing." Chloe v. DesignersImports.com USA Inc., No. 07 Civ. 1791(CS), 2009 WL 1227927, at *6 (S.D.N.Y. Apr. 30, 2009); Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119-20 (S.D.N.Y. 2008)).

(Id. ¶ 20; see also Suarez Decl. ¶ 18-20 (swearing to same facts for Wiley Plaintiff).) Defendant has not contested these facts and has admitted to selling textbooks through his online storefront. (Answer ¶¶ 8-12.) Given this, Plaintiffs are entitled to Summary Judgment on their trademark claims.

### D.  Damages

Plaintiffs have moved for statutory damages for willful infringement under the Copyright Act.[5] 17 U.S.C. § 504(c)(1) provides for statutory damages of not less than $750.00 or more than $30,000.00 for each copyright infringed. 17 U.S.C. § 504(c)(1). In cases of willful infringement, a Court may increase the award up to $150,000.00 per copyright infringed. 17 U.S.C. § 504(c)(2). Plaintiffs claim that a willful violation occurred because Defendant "either knew of, or recklessly disregarded, the infringing nature of the products he sold." Plaintiffs move for $50,000.00 for each title infringed, or $550,000.00 total for 11 infringing works. (Def.'s Mot. at 13-14.)

---

[5] The Plaintiffs have not moved for damages on their trademark claims, presumably because this Court has previously recognized in this case that a party may not obtain double recovery when copyright infringement and trade secret misappropriation are coextensive. (Cengage v. Globonline SDN et al., 14 Civ. 3174 (DAB), Mem. & Order of Apr. 25, 2018, dkt. 175 at 3-4 (citing Comput. Assocs. Int'l, Inc. v. Atlai, Inc., 982 F.2d 693, 720 (2d Cir. 1992)).)

However, in his Answer, Defendant repeatedly claims he had no knowledge that the textbooks he sent were infringing. (See, e.g., Answer ¶ 2 ("I did not know if any of the books were not [sic] legitimate or authorized as claimed by the plaintiffs."); id. ¶ 20 ("I deny that I know [the scheme alleged in the Complaint] would have violated Plaintiffs' intellectual property rights, including their copyrights and trademark rights in the Plaintiffs' respective Authentic Works.").) Whether or not Defendant knew that he was infringing on Plaintiffs' copyrights is a genuine dispute of material fact that precludes summary judgment on damages. See Island Software, 413 F.3d at 263 (reversing summary judgment damages award because defendant "repeatedly denied that he had actual knowledge of any infringing activities, and [Plaintiff] does not contend that conclusive evidence of actual knowledge can be found in [Defendant's] affidavit or deposition."); Lipton v. Nature Co., 71 F.3d 464, 472 (2d Cir. 1995) ("[W]e reverse the district court's award of summary judgment to Lipton on the question of willful infringement and its award of enhanced damages pursuant to 17 U.S.C. § 504(c)(2).").

Plaintiffs' argument that Defendant should have known his conduct was infringing simply because some of the books Plaintiffs received were of lower quality is not sufficient to award them willful infringement damages as a matter of law.

Plaintiffs provide no specifics on which textbooks they are referring to, or how and if Defendant ever examined them himself. Defendant even states that he never saw some of the textbooks he sold through his website. (See Answer ¶ 3 ("[O]ften times I would buy from another seller on one of the online marketplaces and have that shipped to the buyer . . . ."); see also id. ¶ 16 ("I did not know about [the infringing activities] due to the way the books were packaged and the individuals that were drop shopping for me reaffirmed that the books are good quality and as expected."). While willfulness is irrelevant for establishing liability itself, it is relevant for calculating damages. Kumar, 721 F. Supp. 2d at 179. Thus, drawing all inferences in favor of the non-moving party, this Court declines to award statutory damages for a willful violation.

This Court refers the issue of statutory damages under 17 U.S.C. § 504(c)(1) to Magistrate Judge Aaron for an inquest consistent with the findings in this Opinion.

E. <u>Permanent Injunction</u>

Finally, Plaintiffs move for a permanent injunction to prevent violations of their copyrights and trademarks. Plaintiff request the Court issue an Order as follows:

> IT IS HEREBY ORDERED, Defendant, his officers, agents, servants, employees, successors, and assigns, and all those

acting in concert or participation with them, are permanently enjoined and restrained from directly or indirectly infringing Plaintiffs' rights in any copyrighted work or any trademarks that are owned or controlled by Plaintiffs (or any parent, subsidiary, or affiliate of Plaintiffs), whether now in existence or later created ("Plaintiffs' Works"). This precludes, without limitation, manufacturing, importing, advertising, promoting, distributing, selling or offering to sell counterfeit or other unauthorized copies of Plaintiffs' Works and/or counterfeit or otherwise infringing goods bearing Plaintiffs' respective trademarks.

IT IS FURTHER ORDERED that Defendant shall destroy all counterfeit copies of Plaintiff's [sic] Works that he has in his possession, custody, or control.

(Pls.' Proposed Summary Judgment Order and Permanent Inj., dkt. 168-1.)

17 U.S.C. § 502(a) confers upon district courts the discretion to grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). In general, a permanent injunction is proper "where liability has been established and there is a threat of continuing infringement." Kumar, 721 F. Supp. 2d at 180-81 (quotations omitted); see also Pearson Educ., Inc. v. Liao, No. 07-CIV-2423 (SHS), 2008 WL 2073491, at *4 (S.D.N.Y. May 13, 2008); Yurman Design, Inc. v. PAJ, Inc., 93 F. Supp. 2d 449, 466 (S.D.N.Y. 2000). "In cases where there is a large number of copyright violations with a continuing threat of

17

infringement, injunctive relief is justified." Kumar, 721 F.
Supp. 2d at 180-181 (citation omitted).

The Second Circuit established in Salinger v. Colting that
the eBay factor test applies to preliminary injunctions, and by
extension permanent injunctions, in the copyright context. 607
F.3d 68, 75-76 (2d Cir. 2010) (citing eBay, Inc. v.
MercExchange, L.L.C., 547 U.S. 388, 390 (2006)); see also id. at
78-79 ("'The standard for a preliminary injunction is
essentially the same as for a permanent injunction with the
exception that the plaintiff must show a likelihood of success
on the merits rather than actual success.'" (quoting Amoco Prod.
Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987)). While
the Second Circuit has not yet directly addressed whether eBay
applies to injunctive relief for trademark infringement actions,
many Courts in this Circuit agree that it is likely applicable.
See, e.g., U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800
F. Supp. 2d 515, 539 (S.D.N.Y. 2011); Pretty Girl, Inc. v.
Pretty Girl Fashions, Inc., 778 F. Supp. 2d 261, 264-65
(E.D.N.Y. 2011); N.Y.C. Triathlon LLC v. N.Y.C. Triathlon Club,
Inc., 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010).

Under the eBay test, a Plaintiff must demonstrate: (1) that
it has suffered an irreparable injury; (2) that remedies
available at law, such as monetary damages, are inadequate to

compensate for that injury; (3) that, considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay, 547 U.S. at 391.

### 1. Irreparable Injury

A plaintiff has a property interest in his or her copyrighted material. Salinger, 607 F.3d at 81. "In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion. . . . Courts have tended to issue injunctions in this context because to prove the loss of sales due to infringement is . . . notoriously difficult." Id. (citations omitted).

Though this Court will not "simply presume irreparable harm," id. at 82 (citing eBay, 547 U.S. at 393), Plaintiffs have demonstrated that the actions of Defendant have irreparably harmed their property interests. They purchased eleven counterfeit copies from Defendant of their own copyrighted textbooks (and shown advertised sales from Defendant's storefronts of hundreds more). (Essig Decl. ¶ 17.) The Plaintiffs noted the "inferior" quality of Defendant's textbooks after having examined them, (id. ¶ 19), and also pointed to online reviews from customers complaining of the "low quality"

19

of Defendant's books. (Id. ¶ 14.) This is sufficient to show "market confusion" over Plaintiffs' protected interests. Salinger, 607 F.3d at 81.

A similar analysis applies to irreparable harm for trademark infringement. "Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" New York City Triathlon, LLC, 704 F. Supp. 2d at 343 (internal quotation marks omitted) (quoting Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985)).

Because Plaintiffs have demonstrated that customers have been confused by Defendant's sales bearing counterfeit trademarks, (Essig Decl. ¶¶ 17-19), they have been irreparably harmed. See U.S. Polo Ass'n, Inc., 800 F. Supp. 2d at 540-41 ("[G]iven the likelihood of confusion between the Polo Player Logo and USPA's Double Horsemen Trademark, the reputation and goodwill cultivated by PRL's would be out of its hands. The USPA Parties' product may or may not be of high quality, sold with sufficient care to customer service, or convey the same branding image that has been highly cultivated by Ralph Lauren.").

## 2. Adequate Remedies at Law

Because there is no assurance that Defendant will not
continue to infringe absent an injunction (or infringe again in
the future), a remedy at law is inadequate to compensate for
Plaintiffs' injuries. See Warner Bros. Entm't Inc. v. Carsagno,
No. 06 CV 2676, 2007 WL 1655666, at *6 (E.D.N.Y. June 4, 2007)
("As there is no assurance in the record against defendant's
continued violation of plaintiff's copyrights, a remedy at law
is insufficient to compensate for plaintiff's injuries."); see
also Pearson Educ., Inc. v. Nugroho, No. 08 CIV. 8034 DAB/AJP,
2009 WL 3429610, at *7 (S.D.N.Y. Oct. 27, 2009).

With regard to Plaintiffs' trademarks, "[b]ecause the
losses of reputation and goodwill and resulting loss of
customers are not precisely quantifiable, remedies at law cannot
adequately compensate Plaintiff[s] for [their] injuries." U.S.
Polo Ass'n, Inc., 800 F. Supp. 2d at 541; see also Nw. Nat'l
Ins. Co. of Milwaukee, Wisc. v. Alberts, 937 F.2d 77, 80 (2d
Cir. 1991) ("The irreparable injury requisite for the
preliminary injunction overlaps with the absent lack of adequate
remedy at law necessary to establish the equitable rights."
(citation omitted)). Thus, there is no adequate remedy at law
for Defendant's copyright and trademark infringements.

3. <u>Balance of Hardships</u>

As to the third factor, balance of hardships, Defendant has
not identified any hardship he would suffer if he could not
continue to infringe on Plaintiffs' copyrights. See, <u>e.g.</u>,
<u>SimplexGrinnell LP v. Integrated Sys. & Power, Inc.</u>, 642 F.
Supp. 2d 167, 197 (S.D.N.Y. 2009) ("[D]efendant has not
identified any hardship it would suffer if infringing uses of
the Programmer were enjoined beyond the legally unprotected
'hardship' of loss of ability to engage in unauthorized conduct
and the concomitant business opportunities that such
unauthorized activities may provide."); <u>Warner Bros. Entm't Inc.
v. RDR Books</u>, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) ("The
only possible harm to Defendant is the loss of the chance to
sell an infringing book, but the law does not protect this type
of hardship."). Plaintiffs, on the other hand, have clearly been
harmed by the risk of confusion among customers and lost sales
from their textbooks.

Similarly, Plaintiffs have demonstrated hardship based on
the likelihood of customer confusion of their trademarks and
potential loss of sales, and Defendant has identified no
hardship in being prohibited from using counterfeit trademarks.

U.S. Polo Ass'n, Inc., 800 F. Supp. 2d at 541. Accordingly, the balance of hardships weighs heavily in Plaintiffs' favor.

### 4. Public Interest

Finally, Courts must consider the public's interest in not being disserved by a permanent injunction. Courts should consider whether "there is a greater public benefit in securing the integrity of [plaintiff's] copyrights than in allowing [defendant] to make [the] copyrighted material available to the public." Carsagno, 2007 WL 1655666, at *6 (quotations omitted) (alterations in original). That is apparent here: the public will be greater served by allowing Plaintiffs to assert continued protection over their copyrights than to allow Defendant to infringe. Indeed, Defendant has not raised a colorable fair use or First Amendment defense in which the public could reasonably benefit from receiving copyrighted material. Salinger, 607 F.3d at 82-83.

As for Plaintiffs' trademarks, "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." New York City Triathlon, 704 F. Supp. 2d at 344 (citing SK & F. Co. v. Premo Pharm. Labs., Inc., 625 F.2d 1055, 1067 (3d Cir. 1980)). Because Plaintiffs have demonstrated that customer confusion has arisen over Defendant's counterfeit

books of lower quality, the public will be served in granting
this injunction.

Therefore, Plaintiffs are entitled to a permanent
injunction restraining Defendant from infringing on their
copyrights and trademarks.

### III. Conclusion

Because there is no genuine dispute of material fact,
Plaintiffs are entitled to Summary Judgment on their Copyright
and Trademark Claims. The Court finds that Defendant has
infringed on Plaintiffs' duly registered copyrights and
trademarks.

The Court does find that there is a genuine dispute of
material fact as to the willfulness of Defendant's infringement.
Accordingly, the Court denies Plaintiffs' request for willful
copyright infringement damages and refers this issue to
Magistrate Judge Aaron for an inquest.

Finally, the Court grants Plaintiffs' request for a
permanent injunction as follows:

> IT IS HEREBY ORDERED, that Defendant, his officers,
> agents, servants, employees, successors, and assigns,
> and all those acting in concert or participation with
> them, are permanently enjoined and restrained from
> directly or indirectly infringing Plaintiffs' rights
> in any copyrighted work or any trademarks that are
> owned or controlled by Plaintiffs (or any parent,
> subsidiary, or affiliate of Plaintiffs), whether now

in existence or later created ("Plaintiffs' Works").
This precludes, without limitation, manufacturing,
importing, advertising, promoting, distributing,
selling or offering to sell counterfeit or other
unauthorized copies of Plaintiffs' Works and/or
counterfeit or otherwise infringing goods bearing
Plaintiffs' respective trademarks

IT IS FURTHER ORDERED that Defendant shall destroy
all counterfeit copies of Plaintiffs' Works that he
has in his possession, custody, or control.


SO ORDERED.

Dated:      September 11, 2018
            New York, New York

                            _Deborah A. Batts_
                            Deborah A. Batts
                    United States District Judge

25